UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
PIKEVILLE

| | | |
|---|---|---|
| LISA M. SMITH, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 7:21-CV-5-REW |
| v. | ) | |
| | ) | OPINION & ORDER |
| KILOLO KIJAKAZI, Acting Commissioner | ) | |
| of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

\*\*\*  \*\*\*  \*\*\*  \*\*\*

Lisa M. Smith appeals the denial of her application for Supplemental Security Income (SSI). *See* DE 1 (Complaint). The parties filed dueling summary judgment motions. DE 15 (Plaintiff's Motion for Summary Judgment); DE 21 (Defendant's Motion for Summary Judgment). The administrative record appears at DE 13-1 (Administrative Transcript and Record). The Court, having considered the full record under governing law, **GRANTS** the Commissioner's motion (DE 21) and **DENIES** Smith's motion (DE 15). Substantial evidence supports the findings underpinning the ALJ's decision, and there is no nexus between the Agency actions at issue and any constitutional vulnerability in the removal provisions applicable to the Commissioner.

## I.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY

On November 8, 2016, Smith applied for Supplemental Security Income (SSI). R. 385. Smith alleged the following conditions rendered her legally disabled and unable to work as of October 1, 2008: "[chronic obstructive pulmonary disease]; Trouble breathing; carpel tunnel; ACL tear in right knee; Pain in both hips; pain in both knees; Back pain; Pain in neck; Headaches; nerve damage in lower back; Anxiety; Depression; obesity; neuropathy in both legs; Insomnia." *Id.* at

1

377, 384 (Application). After an initial review, experts at Social Security denied the claim. *See id.* at 224-27 (Denial of Application). Upon request for reconsideration, another set of experts reconsidered the claim and again concluded that Smith was not disabled. *See id.* at 231-234 (Denial of Application on Reconsideration). Smith appealed that finding, resulting in a hearing before Administrative Law Judge (ALJ) Melinda Wells. *See id.* at 61-80 (Transcript of Hearing). After a hearing and review, Judge Wells concluded that Smith "has not been under a disability within the meaning of the Social Security Act since November 8, 2016, the date the application was filed." *Id.* at 174 (Denial of Application by Judge Wells). In her decision, Judge Wells made the following findings consistent with the codified five-step evaluation sequence. *See id.* at 171-190; *see also* 20 C.F.R.§ 416.920. Although the Appeals Council vacated the ruling, R. 214, the analysis bears some discussion.

First, Judge Wells found that Smith "has not engaged in substantial gainful activity since November 8, 2016, the application date." *Id.* at 176; *see also* 20 CFR § 416.920(b). At step two, Judge Wells then found that Smith "has the following severe impairments: degenerative disc disease, degenerative joint disease, chronic obstructive pulmonary disease, carpal tunnel syndrome, and obesity." R. 176; *see also* 20 CFR § 416.920(c). In reaching this decision, Judge Wells considered Smith's prior medical records—including treatments, expert medical opinions, and diagnoses—related to Smith's claimed physical and mental impairments.[1] R. 176, 178-179.

Third, Judge Wells then determined that Smith lacks "an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR

---

[1] Judge Wells also found that Smith's "Hepatitis C is nonsevere because it does not significantly limit her ability to perform basic work activities." R. 176. Also, because Smith's "medically determinable mental impairments cause no more than 'mild' limitation in any of the functional areas, they are nonsevere." R. 176, 178; 20 C.F.R. § 416.920a(d)(1).

2

Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926)." *Id.* at 179; 20 CFR § 404, Subpart P, App. 1; *see also* 20 CFR §§ 416.920(d), 416.925, 416.926. Judge Wells grounded her decision on Smith's medical records as they related to the various, relevant sections of Appendix 1 that would automatically qualify Smith as disabled. R. 179.

At step four, Judge Wells defined Smith's Residual Functional Capacity (RFC) after "careful consideration of the entire record," including a prior ALJ determination. *See id.* at 180. Judge Wells considered the full array of Smith's claimed symptoms and the extent to which those symptoms were consistent with other relevant medical evidence, pursuant to 20 C.F.R. § 416.929 and SSR 16-3p.[2] *See id.* She found the degree of Smith's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." *Id.* at 182. Based on the evidence in the record juxtaposed with the prior ALJ determination, Judge Wells "adopt[ed] the physical limitations from the prior residual functional capacity because the evidence since the prior decision was issued does not demonstrate significant improvement or worsening." *Id.* at 183; *see also Drummond v. Comm'r of Soc. Sec.*, 126 F.3d 837, 842 (6th Cir. 1997).[3] Thus, Judge Wells found that Smith could perform "light work." R. 180-183; 20 C.F.R. § 416.967(b) She also expressed in the RFC that Smith "must use a walker when walking." R. 180. Judge Wells departed, however, from the

---

[2] SSR 16-3p (S.S.A.), 2017 WL 5180304 (Oct. 25, 2017).
[3] Wells acknowledged throughout the case, per *Earley v. Comm'r of Soc. Sec.*, 893 F.3d 929, 933-34 (6th Cir. 2018), that the prior decision informed but did not bind her. Tr. 64 (First Hearing), 86 (Second Hearing).

3

prior ALJ's decision regarding Smith's mental limitations "because new evidence shows that the claimant's mental limitations are no longer severe." *Id.* at 183.[4]

Judge Wells then applied these findings to the Medical-Vocational Guidelines and considered a vocational expert's testimony to determine that Smith could not perform any past relevant work. *See id.* at 183-184; *see also* 20 C.F.R. § 416.920(a)(4)(iv).

At the fifth step, Judge Wells determined that "considering the claimant's age, education, work experience, and residual functional capacity, the claimant is capable of making a successful adjustment to other work that exists in significant numbers in the national economy." R. 184-185. Judge Wells relied partially on the vocational expert's testimony that Smith could "perform the requirements of representative occupations at the light level as a package tagger, . . . nut and bolt assembler, . . . and price marker." *Id.* at 184. A "finding of 'not disabled' is therefore appropriate." *Id.* at 185.

Smith successfully petitioned the SSA Appeals Council for review. *See id.* at 214. After review, the Council vacated Judge Wells's decision, based on various errors of law, and remanded the case for Judge Wells to consider: (1) the evidence from Pikeville Medical Center related to Smith's intractable migraines, (2) Smith's partial amputation of her right thumb, (3) Smith's need for the walker, its medical justification, and the dynamic relative to Listing 1.00B.2.b, and (4) vocational expert testimony concerning hypothetical jobs available to Smith in the national economy, given the final RFC. *See id.* at 214-215.

_____

[4] Judge Wells noted that, as analyzed under the four "paragraph B" criteria earlier in her opinion, Smith's "mental impairments are stable with medication and there are no abnormal mental status findings." R. 183.

It's safe to say that the Appeals Council saw a fundamental disconnect in the ALJ's ruling. The ALJ had purported to adopt the previously adjudicated RFC as to physical limitations. *See* R. 183. However, the text of the ruling appended the new walker restriction, which then sent an inconsistent ripple through the balance of the opinion. That created dissonance with the Vocational Expert hypothetical, a potential grid rule issue, and doubt as to the ultimate conclusion. The Appeals Council reset the framework and sent the case back to Judge Wells.

On remand, Judge Wells conducted a remote hearing at which vocational expert Anthony Michael and Smith testified by phone. *See id.* at 11; *id.* at 84-104. Judge Wells, again, evaluated Smith's claim using Social Security's five-step analysis. First, Judge Wells again found that Smith had not engaged in gainful employment since November 8, 2016. *See id.* at 13-14; 20 C.F.R.§ 416.920. At the second step, under § 416.920, the ALJ found that Smith had "the following severe impairments: degenerative disc disease, degenerative joint disease, chronic obstructive pulmonary disease, carpal tunnel syndrome, and obesity." R. 14-17; 20 C.F.R. § 416.920(c). In so finding, Judge Wells considered multiple medical records chronicling Smith's prior diagnoses—including evidence of Smith's partial thumb amputation, intractable migraine headaches, and opioid dependence—consistent with the Appeals Council's remand orders. *See* R. 14-17. Judge Wells also reconsidered Smith's mental impairments under § 416.920. *See id.* at 15-17. Judge Wells recognized Smith's prior diagnoses and evaluated her progress considering the medical records and opinions from doctors Rigby, Brake, and Guerrero. *See id.* at 15. Judge Wells analyzed this evidence in light of the four "paragraph B" functional areas and found that because Smith's "medically determinable mental impairments cause no more than 'mild' limitation in any of the functional areas <u>and</u> the evidence does not otherwise indicate that there is

5

more than a minimal limitation in the claimant's ability to do basic work activities, they are nonsevere." *Id.* at 16 (emphasis in original).

Next, at the third step, Judge Wells considered Smith's physical examinations and prior medical records in concert with the listed impairments in Appendix 1. *See id.* at 17; 20 C.F.R. Part 404, Subpart P, App. 1. The ALJ found that Smith lacked "an impairment or combination of impairments equal in severity to any listed impairment [in Appendix 1], as no treating or examining physician has mentioned findings equivalent in severity to the criteria of any listed impairment." R. 18.

Fourth, Judge Wells analyzed Smith's symptoms and the extent to which they were consistent with objective medical evidence or other evidence to determine Smith's residual functional capacity. *See id.* at 18-19. Judge Wells considered Smith's testimony covering her physical limitations and compared it with relevant "medical evidence and other evidence in the record." *Id.* Judge Wells noted that Smith's physicians' findings did not align with the severity of Smith's alleged symptoms. *See id.* at 19. Judge Wells chronicled Smith's back treatment and eventual cane and walker prescription from May 2018. *See id.* at 18-19. Laced throughout her analysis, Judge Wells highlighted that Smith had received medication or treatment to address her prior pain or debilitations. *See id.* Judge Wells acknowledged that Smith had consulted a broad array of medical personnel to address lower back pain, COPD, degenerative disc/joint disease, carpal tunnel surgery, and obesity. *See id.* at 18-21.

Ultimately, Judge Wells concluded that Smith's alleged symptoms or their intensities "are not entirely consistent with the overall evidence." *Id.* at 21. Smith's respiratory examinations "have consistently been normal except for a very few exacerbations." *Id.* Also, importantly, even though "the record does show a prescription for a cane and walker, examination has shown no

6

ambulatory difficulties that would require use of such a device." *Id.* Further, except for one examination, "examinations showed a normal gait, normal or only mildly limited strength, and normal reflexes." *Id.*.[5] Judge Wells based this conclusion partly on documentation from the Pikeville Medical Center and Jennifer Martin—evidence absent from the record in 2018. *See id.* at 20. The Martin records indicated to Judge Wells that Smith (e.g., in *November* 2019) had normal muscle strength, gait, sensation, and reflexes, and therefore did not require a walker. *See id.* at 20; *see also id.* at 938.

Judge Wells then pivoted to the prior ALJ residual functional capacity determination from 2015. *See id.* at 21-22; *see also Drummond*, 126 F.3d at 842. Judge Wells reviewed the prior decision against intervening proof and evidence, recognizing the propriety of a fresh look if "there is new and material evidence or a showing of changed circumstances relating to a determination of the present claim." R. at 22. In the transcript, the ALJ affirmed this understanding: "I'm not bound by those in anyway and I will make my own Decision." Tr. 86.

Accordingly, after review, Judge Wells "adopt[ed] the physical limitations from the prior residual functional capacity because the evidence since the prior decision was issued [did] not demonstrate significant improvement or worsening." *Id.* at 22. Physically, Judge Wells found that Smith had "the residual functional capacity to perform light work." *Id.* Judge Wells departed, however, from the ALJ's prior mental limitations determination because "new evidence shows that [Smith's] mental limitations are no longer severe." *Id.* Ultimately, in light of the claimant's

---

[5] Judge Wells had determined in her October 26, 2018, decision that Smith "must use a walker when walking." R. 180. However, her decision had internal inconsistencies and also did not include later documentation from the Pikeville Medical Center or Jennifer Martin. *Compare id.* at 29-30 *with id.* at 189-190. Notably, Judge Wells's new decision included medical records indicating that Smith had normal muscle strength, gait, sensation, and reflexes. *See id.* at 20; *see also id.* at 938.

residual functional capacity, Judge Wells next turned to Smith's past work and found that Smith was "unable to perform any past relevant work." *Id.*

Fifth, upon considering Smith's "age education, work experience, and residual functional capacity," Judge Wells determined that jobs exist "in significant numbers in the national economy that the claimant can perform." *Id.* at 23. Foundational to her determination, Judge Wells considered the vocational expert's testimony that Smith could work as a routing clerk, price marker, or garment bagger. *See id.*; *see also id.* at 102-103. Thus, although Smith could not perform past, relevant work, Judge Wells concluded that Smith could adjust to pursue work that exists in significant numbers in the national economy, mandating a designation of "not disabled." *Id.* at 24.

Smith requested that the Appeals Council review Judge Wells's June 2, 2020, decision. *Id.* at 1. The Council denied her request. *Id.* Smith now seeks judicial review under 42 U.S.C § 405(g). *See* DE 1; DE 15 at 1.

## II.    ANALYSIS

### A.  Standard of Review

The Court has carefully considered Judge Wells's decision, the transcript of the administrative hearing, and the pertinent administrative record. The Court has turned every apt[6] page, primarily focusing on the portions of the record to which the parties specifically cite. The decision at issue is the post-remand ruling. However, as the discussion shows, the Court has evaluated the decisional history in full, including differences in the decisions and the reasons.

---

[6] That is, those records relevant to the particular issues Smith presents for review.

Judicial review of an ALJ's decision to deny SSI is a limited and deferential inquiry into whether substantial evidence supports the denial's factual decisions and whether the judge properly applied relevant legal standards. *See Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009); *Jordan v. Comm'r of Soc. Sec.*, 548 F.3d 417, 422 (6th Cir. 2008); *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989) (citing *Richardson v. Perales*, 91 S. Ct. 1420, 1427 (1971)); *see also* 42 U.S.C. § 405(g) (providing and defining judicial review for Social Security claims) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive[.]").

Substantial evidence means "more than a scintilla of evidence, but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994); *see also Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004). The Court does not try the case *de novo*, resolve conflicts in the evidence, or revisit questions of credibility. *See Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007). Similarly, the Court does not reverse findings of the ALJ merely because the record contains evidence—even substantial evidence—to support a different conclusion. *Warner*, 375 F.3d at 390. Rather, the Court must affirm the agency decision if substantial evidence supports it, even if the Court might have decided the case differently as an original matter. *See Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005); *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389–90 (6th Cir. 1999).

The ALJ, when querying disability, conducts the recognized five-step analysis. *See Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994); 20 C.F.R. § 416.920(a)(4). At Step 1, the judge considers whether the claimant performs substantial gainful activity. *See*

9

*Preslar*, 14 F.3d at 1110; 20 C.F.R. § 416.920(a)(4)(i).[7] At Step 2, the judge determines whether one or more of the claimant's impairments are severe. *See Preslar*, 14 F.3d at 1110; 20 C.F.R. § 416.920(a)(4)(ii). At Step 3, the ALJ analyzes whether the claimant's impairments, alone or in combination, meet or equal an entry in the Listing of Impairments. *See Preslar*, 14 F.3d at 1110; 20 C.F.R. § 416.920(a)(4)(iii). At Step 4, the judge defines the claimant's residual functional capacity and considers whether the claimant can perform past relevant work. *See Preslar*, 14 F.3d at 1110; 20 C.F.R. § 416.920(a)(4)(iv). The inquiry at this stage (if applicable) is whether the claimant can still perform that type of work, not necessarily the specific past job. *See Studaway v. Sec'y of Health & Human Servs.*, 815 F.2d 1074, 1076 (6th Cir. 1987). Finally, at Step 5, when the production burden shifts to the Commissioner, if the claimant cannot perform past relevant work, the judge determines whether significant numbers of other jobs exist in the national economy that the claimant can perform, given the applicable RFC. *See Preslar*, 14 F.3d at 1110; 20 C.F.R. § 416.920(a)(4)(v). If the ALJ determines at any step that the claimant is not disabled, the analysis ends at that step. *Mowery v. Heckler*, 771 F.2d 966, 969 (6th Cir. 1985).

When reviewing Judge Wells's application of the legal standards, the Court gives deference to her interpretation of the law and reviews the decision for reasonableness and consistency with governing statutes. *See Whiteside v. Sec'y of Health & Human Servs.*, 834 F.2d 1289, 1292 (6th

---

[7] Smith seeks only Supplemental Security Income. R. 371. Accordingly, 20 C.F.R. § 416 (Supplemental Security Income) controls, not § 404 (regulation for Disability Insurance Benefits). However, the "standard of review for supplemental security income cases mirrors the standard applied in social security disability cases." *Bailey v. Sec'y of Health & Human Servs.*, 922 F.2d 841, No. 90-3265, 1991 WL 310, at *3 (6th Cir. Jan. 3, 1991) (table); *see also Roby v. Comm'r of Soc. Sec.*, No. 12-10615, 2013 WL 451329, at *3 (E.D. Mich. Jan. 14, 2013) ("The standard for disability under both the DIB and SSI programs is virtually identical."), *adopted in* 2013 WL 450934 (E.D. Mich. Feb. 6, 2013). Accordingly, 20 C.F.R. §§ 404 and 416 are largely interchangeable, as are the explicating cases.

Cir. 1987). In a Social Security benefits case, the Agency's construction of the statute should be followed "unless there are compelling indications that it is wrong." *Merz v. Sec'y of Health & Human Servs.*, 969 F.2d 201, 203 (6th Cir. 1992) (quoting *Whiteside*, 834 F.2d at 1292).

Smith presents two arguments: (1) Judge Wells improperly evaluated Smith's need for a walker, and (2) Judge Wells lacked authority to decide Smith's claim (as an SSA structural argument, regarding Commissioner-removal power). DE 15 at 4, 9. The Court now addresses, and rejects, each in turn.

B. <u>Judge Wells did not reversibly err when she omitted the need for an assistive device from the residual functional capacity finding.</u>

Smith first argues that Judge Wells improperly analyzed and ruled on Smith's need for a walker. *See* DE 15 at 4. Specifically, Smith maintains that she requires a walker, which precludes light work. *See id.* at 4-5. Smith states that Judge Wells's contradictory conclusion lacks a foundation in substantial evidence. *See id.* at 4-8. The Court disagrees.

An ALJ's factual decision withstands review if it is supported by "substantial evidence"—*i.e.*, the amount of evidence a "reasonable mind might accept as adequate to support a conclusion." *Cutlip*, 25 F.3d at 286. Evidence in the record supporting a different conclusion does not mean that the decision lacks substantial evidence. *Warner*, 375 F.3d at 390. A court must uphold a reasonably supported adjudication. *Longworth*, 402 F.3d at 595.

In reaching a determination, a claimant's subjective complaints of pain or other symptoms are, of course, valid evidence for an ALJ to consider. *Blankenship v. Bowen*, 874 F.2d 1116, 1123 (6th Cir. 1989); 20 C.F.R. §§ 416.920, 929. However, such complaints are not, in a vacuum, outcome determinative. *See* SSR 16-3p(2)(a). They are part of a holistic review, considered alongside other factors, including the objective medical evidence and other evidence and opinions

in the record. *Id.* Accordingly, "an ALJ is not required to accept the claimant's complaints at face value[,] but may discount them based on several factors, including the claimant's daily activities," the claims' independent evidentiary support, treatment and treatment efficacy, and other factors relevant to the claimant's functional limitations and restrictions. *Henderson v. Comm'r of Soc. Sec.*, No. 1:19-CV-2913, 2020 WL 7481544, at *12-13 (N.D. Ohio Nov. 24, 2020), *report and recommendation adopted*, No. 1:19-CV-2913, 2020 WL 7480666 (N.D. Ohio Dec. 18, 2020).

Here, Judge Wells fully and properly considered Smith's impairment claims and weighed them against evidence in the record. R. 18-22. Judge Wells, relevant to this argument, recognized Smith's severe impairments and dealt specifically with her fall history, diagnosed pitting edema, and history of back and leg pain.    *See id.* at 20 (recounting treatment history). Further, she conceded that Smith previously received a prescription for a cane and walker—as well as pain medication—in May of 2018, two months after Smith's March 2018 fall. *See id.* But Judge Wells also found that the medical records from July 2018 through the hearing did not highlight any lingering medical impairments relative to walking or ambulation. *See id.* at 20-21. In July 2018 she "had an unsteady gait" but received a "4/5 motor strength" in all extremities. *Id.* at 20 (citing Ex. C18F at 6). Further, in November 2019, during a visit to establish a new patient relationship, a nurse practitioner (Jennifer Martin) indicated that Smith had "normal muscle strength, normal gait, intact sensation, and normal reflexes," consistent with the medical records for that visit. *Id.* at 20 (citing Ex. C20F at 12). Indeed, Judge Wells mined the long record and could find but one instance of Smith employing the walker during an examination.  Accordingly, Judge Wells did not find that Smith required a walker or cane—departing from the text of her prior determination. *Compare id.* at 180 (October 26, 2018, determination) *with id.* at 20 (June 2, 2020, determination).

12

The Commissioner notes the many references, indicative of stable gait and station, supportive of Judge Wells's view in the 2019-20 longitudinal record.  *See* DE 21, at 4-5.

Smith insinuates that Judge Wells altered her prior decision based on nothing more than a motivation to deny Smith benefits after the Appeals Council vacated and remanded Wells's first decision. *See* DE 15 at 6. Smith claims that nothing changed between Judge Wells's initial 2018 decision and her 2020 decision except for "the Appeals Council point[ing]out that the need for a walker could implicate disability." *Id.* at 7. Smith's argument is not well-taken.

As the Commissioner points-out, Judge Wells's 2020 decision had and incorporated more medical records than her 2018 decision. *See* R. 20; *see also* DE 21 at 5. Indeed, the medical records Judge Wells relied upon indicate that Smith had sufficiently strong lower extremities, no more than an "unstable gait" on one occasion, and most recently "a normal gait, normal or only mildly limited strength, and normal reflexes." R. 21, 908, 938 (July 6, 2018, and November 22, 2019, medical records). Further "Smith "was noted to be using an assistive walking device only once during examination." *Id.* at 21. Indeed, from mid-2019 forward, the records consistently depict Smith as having a "stable gait and station," with no reference to use of or need for an assistive device.  *See, e.g.*, R. 938, 1023 (Jan. 2020, stable gait), 1035 (Feb. 2020, same with no abnormal movement), 1045, 1493 (Sept. 2019 same, with no pain), 1498 (Aug. 2019), 1555 (July 2019), 1600 (same), 1611 (same). Thus, Smith relied on medical records largely absent from the October 26, 2018, record to inform her determination. *See id.* at 908, 938. This evidence reasonably supported Judge Wells's determination, which crosses the review standard, even if the evidence could support another, even opposite, conclusion. *See Her*, 203 F.3d at 390; *Warner*, 375 F.3d at 390.

The Appeals Council remand essentially required Judge Wells to consider the foundations of her prior ruling, which was an adverse determination. That ruling had plain structural faults— the ALJ stated an intent to adopt the extant RFC, as to physical limits, but then grafted the walker restriction to the end. Thus, the ALJ did something directly contrary to her own stated goal; this failure led to an inaccuracy in the Vocational Expert formulation and raised several questions on review. On remand, the ALJ, essentially as a *de novo* process, reheard the matter and reformulated the decision. She fixed the analytical flaws and incorporated evidence not previously available. Her overall take on the walker prescription, though not irresistible, surely is reasonable. The prescription existed, and some doctors noted episodic gait weakness or instability.[8] However, the post-July 2018 record almost completely supports the views of Judge Wells. Even prior records, such as those of prescriber Bayes, are chock-full of references to "no gait abnormality," "no joint pain," and "no numbness."  *See, e.g*., R. 829 (Sept. 2018), 832 (July 2018), 834 (May 2018, the month of walker prescription). Surely, the conflicting record creates a fact question for resolution by the ALJ. Judge Wells, charged with weighing proof, had to assess testimony of Smith (*e.g.*, claiming two years of required walker use, R. 89, 93, and the ability to walk but 10 feet, R. 94) and a medical history that included very long stretches of relatively normal, unremarkable, and unassisted medical visits. In November of 2019, Smith had "normal gait and station" and "normal tone and motor strength." R. 938.[9] The treatment by Judge Wells, in particular deletion of the

---

[8] The sprinkling of records Smith cites, DE 15 at 5, were all discussed and accounted for by ALJ Wells.  She noted and weighed the Bayes prescription and the prior 2017 and later 2018 encounters.
[9] Judge Wells also cited the confirmatory state agency physicians' views, which squared with the prior adjudicated limits. R. 22. As for the suggestion that Wells inserted her own medical judgment, the Court notes a) her analysis rested entirely on the observations and testing of medical sources and b) the AC remand had specifically queried the "medical necessity and conditions for use" in the targeted walker restriction. R. 215. Judge Wells simply screened that assistive device against the justifications in the record.

erroneous walker RFC addendum, was within the zone of reasonable decision-making and thus stands insulated from further review. Whatever error led to the first decision, Judge Wells's second cut, the one here under review, was appropriate.

   C. *Seila Law* does not implicate or impact Judge Wells's decision.

   Smith next challenges Judge Wells's SSI determination as constitutionally deficient under *Seila Law, LLC v. Consumer Fin. Prot. Bureau*, 140 S. Ct. 2183 (2020). *See* DE 15 at 8-10.[10] The theory is that an invalid limit on removal of the Commissioner somehow taints all decisions of a Commissioner properly appointed. As a remedy, Smith asks the Court to vacate and remand Judge Wells's decision. *See id.*

   It is important at the outset to distinguish between traceability required for standing purposes and traceability required for retrospective relief. Of course, Smith must have Article III standing to make a constitutional claim. *See generally Lujan v. Defenders of Wildlife*, 112 S. Ct. 2130, 2136 (1992). "To establish Article III Standing, a plaintiff must show that it has suffered an 'injury in fact' that is 'fairly traceable' to the defendant's conduct and would likely be 'redressed by a favorable decision.'" *Collins v. Yellen*, 141 S. Ct. 1761, 1779 (2021) (quoting *Lujan*, 112 S. Ct. at 2136)). For standing purposes, the Court must analyze "whether the plaintiff's injury can be traced to 'allegedly unlawful conduct' of the defendant, not to the provision of law that is challenged." *Id.* (quoting *Allen v. Wright*, 104 S. Ct. 3315, 3324 (1984)). For retrospective relief, however, such allegations are insufficient. *See id.* at 1788 n.24. Rather, as to that question, a

---

[10] In *Seila Law*, the Supreme Court held that Congress may not limit the removal of an agency's single-director leader to only instances of "inefficiency, neglect of duty, or malfeasance of office." *Seila Law*, 140 S. Ct. at 2197. The Court noted in dicta that the SSA commissioner is a structural analog to the Consumer Financial Protection Bureau. *Id.* at 2202. The Commissioner concedes that the removal restriction codified in 42 U.S.C. § 902(a)(3) "violates the separation of powers to the extent it . . . limit[s] the president's authority to remove the commissioner without cause." *See* DE 21 at 6.

15

plaintiff must demonstrate that the claimed unconstitutional provision actually harmed the claimant. *See id.* Thus, for example, if the removal limitation thwarted the President, then continuing acts by the protected Commissioner could yield traceable harm.

Some courts have previously found Article III standing for challenges like Smith's. *See, e.g.*, *Dixie C. v. Kilolo Kijakazi*, No. 3:21-cv-764-G-BN, 2021 WL 4822838 at *5 6 (N.D. Tex. Sep. 20, 2021); *but see Helms v. Comm'r of Soc. Sec.*, No. 3:20-cv-589-MOC, 2021 U.S. Dist. LEXIS 230193, at *4 5 (W.D.N.C. Dec. 1, 2021). But, even if Smith's harm is sufficiently traceable to confer Article III standing, that would not entitle her to relief, as the Supreme Court made clear in *Collins*. *See Collins*, 141 S. Ct. 1761, at 1788 n.24 ("[A] plaintiff that challenges a statutory restriction on the President's power to remove an executive officer can establish standing by showing that it was harmed by an action that was taken by such an officer and that the plaintiff alleges was void. . . . But that holding on standing does not mean that actions taken by such an officer are void *ab initio* and must be undone") (italics in original).

The Supreme Court in *Collins* stressed "that the unlawfulness of the removal provision does not strip the Director of the power to undertake other responsibilities of his office." *Collins*, 141 S. Ct. at 1788 n.23. Thus, in *Collins*, the Supreme Court refused to void automatically agency action undertaken by a lawfully *appointed* Director while operating under an unconstitutional *removal* provision. *See id.* The Court counselled that retrospective relief, therefore, requires that the plaintiff demonstrate harm traceable directly to the unconstitutional removal provision. *See id.* at 1788-89. Although Smith generically makes a *Seila Law* complaint, Smith does not discuss *Collins* or in any manner link the removal deficit to any action relevant to her case. She is not entitled to retrospective relief.

16

Both Smith and the Commissioner agree that "the ALJ in Smith's case was appointed by the Acting Commissioner of SSA [Berryhill]." DE 15 at 10; *see also* DE 21 at 8-9. After becoming Acting Commissioner, Berryhill ratified Judge Wells's appointment on July 16, 2018. *See* SSR 19-1p, 2019 WL 1324866 at *2. The Court finds, consistent with other courts, that as Acting Commissioner, Berryhill was not subject to the (concededly) unconstitutional removal restrictions in 42 U.S.C. § 902(a)(3). *See, e.g.*, *Boger v. Kijakazi*, No. 1:20-CV-00331-KDB, 2021 WL 5023141, at *3 n.4 (W.D.N.C. Oct. 28, 2021) (treating the removal limitation as likely inapplicable to the Acting Commissioner).[11] The unconstitutional "for cause" removal restriction in section 902(a)(3) is notably absent from the subsection (b)(4)—the provision for filling the Commissioner's vacancy with an "Acting Commissioner." *See* 42 U.S.C. § 902(b)(4). It is also absent from President Obama's December 23, 2018, Memorandum providing a method for filling the SSA Commissioner vacancy—the memorandum under which Berryhill was ultimately appointed as Acting Commissioner.[12] *See* Memorandum of December 23, 2016, *Providing an Order of Succession Within the Social Security Administration*, 81 Fed. Reg. 96337, 96337, 2016 WL 787744 (Dec. 23, 2016); *see also* U.S. Gov't Accountability Off., B-329853, *Violation of the Time Limit Imposed by the Federal Vacancies Reform Act of 1998—Commissioner, Social Security Administration*, (March 6, 2018).

---

[11] Under the unconstitutional removal provision, the President could only remove the Commissioner of Social Security upon finding "neglect of duty or malfeasance in office." 42 U.S.C. § 902(a)(3).

[12] Former President Obama, under the Federal Vacancies Reform Act, issued a memorandum in 2016 providing the order of succession for the Social Security Commissioner upon vacancy. *See* Memorandum of December 23, 2016, *Providing an Order of Succession Within the Social Security Administration*, 81 Fed. Reg. 96337, 96337, 2016 WL 787744 (Dec. 23, 2016). That memorandum authorized the Deputy Commissioner for Operations as the first-in-line to fill the vacancy. *See id.*

As the Supreme Court emphasized, "[w]hen a statute does not limit the President's power to remove an agency head, we generally presume that the officer serves at the President's pleasure," and when "Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposefully in the disparate inclusion or exclusion." *Collins*, 141 S. Ct. at 1782 (quoting *Barnhart v. Sigmon Coal Co.*, 122 S. Ct. 941, 951 (2002)). Here, both scenarios contemplated by the Supreme Court in *Collins* counsel that Berryhill was removable at will by the President. *See Collins*, 141 S. Ct. at 1783 (holding, based on the structure and text, "that the Recovery Act's removal restriction does not extend to an Acting Director").

The upshot is rejection of Smith's argument for two reasons. First, the Acting Commissioner had no removal limitation and thus no *Seila Law* problem to begin with. Second, even if a *Seila Law* problem applies to the confirmed Commissioner, Smith does not link the removal stricture to the Agency's decisions or actions in this case. The only Circuit to have addressed this argument in a published decision agrees with the last-stated analysis. *See Kaufmann v. Kijakazi*, 32 F.4th 843, 850 (9th Cir. 2022) ("In sum, we hold that the removal provision in 42 U.S.C. § 902(a)(3) violates separation powers; that the provision is severable; and that, unless a claimant demonstrates actual harm, the unconstitutional provision has no effect on the claimant's case."). Thus, the required *Collins* linkage between removal stricture and agency action, nowhere addressed in Smith's brief, is absent.

## III.   CONCLUSION

For the stated reasons, the Court **GRANTS** DE 21 and **DENIES** DE 15. The Court will enter a separate Judgment.

18

This the 13th day of July, 2022.

Signed By:

_Robert E. Wier_

**United States District Judge**